IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:09-CV-68-D

HOWARD DALE TOLBERT,          )
                              )
            Plaintiff,        )
                              )
      v.                      )          **MEMORANDUM AND**
                              )          **RECOMMENDATION**
MICHAEL J. ASTRUE,            )
Commissioner of Social Security,  )
                              )
            Defendant.        )

In this action, plaintiff Howard Dale Tolbert ("plaintiff") challenges the final decision of

defendant Commissioner of Social Security ("Commissioner") denying his application for a period

of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on

the grounds that he is not disabled.[1] The case is before the court on the respective parties' motions

for judgment on the pleadings. (D.E. 16, 17). Plaintiff filed a memorandum in support of his motion

(D.E. 16-1) with exhibits (D.E. 16-2 though 16-4) and the Commissioner a memorandum in support

of his motion (D.E. 18). The motions were referred to the undersigned Magistrate Judge for a

memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 19). For the

reasons set forth below, it will be recommended that plaintiff's motion be granted, the

Commissioner's motion be denied, and this case be remanded for further proceedings.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

# I. BACKGROUND

## A.    Case History

Plaintiff filed applications for DIB and SSI on 22 September 2004, alleging a disability onset date of 22 April 2003 due to ACL (*i.e.*, anterior cruciate ligament) reconstruction of his right knee and arthritis.[2]  Transcript of Proceedings ("Tr." or "tr.") 15, 29 no. 3, 180 ¶ 5.  Plaintiff later also claimed disability on the basis of nodules in his left arm and chest, and a prior heart attack.  *Id.* 18 ¶ 3.[3]  The applications were denied initially on 5 January 2005 (*id.* 33-37) and on reconsideration on 11 March 2005 (*id.* 42-43), and a request for a hearing was timely filed on 10 May 2005 (*id.* 32).

On 17 May 2006, a hearing was held before an Administrative Law Judge ("ALJ").  *Id.* 206-13.  Although plaintiff was informed before the hearing about the right to representation, apparently by the ALJ, he chose to proceed without an attorney or other representative.  *Id.* 15, 209.  At the conclusion of the hearing, the ALJ determined that there was a lack of medical evidence in the case.  *Id.* 212.  He ordered a consultative examination; the examination report (*id.* 167-68) was issued by James A. Maultsby, M.D. on 2 January 2007 and received by the ALJ on 16 February 2007; and the hearing record was closed on 28 February 2007 (*id.* 15).

In the meantime, on 17 January 2007, Disability Determination Services requested that Dr. Maultsby submit a medical source statement regarding plaintiff's physical ability to perform work-related activities.  *See id.* 201.  He issued the statement (*id.* 202-05) on 23 January 2007, but it did not reach the ALJ before he closed the hearing record.

---

[2] Plaintiff had previously submitted applications for DIB and SSI on 20 May 2003 alleging the same disability date (tr. 51-53, 195-99), but these applications were denied initially (*id.* 46-50)and upon reconsideration (*id.* 38-39, 175-76), and plaintiff did not pursue them.

[3] For ease of reference, the court has included in citations to the ALJ's decision the numbered paragraph in which the cited material is located if more than one numbered paragraph appears on the page referenced.

2

In a written decision dated 1 March 2007, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. *Id.* 15-22. Plaintiff timely requested review by the Appeals Council on 4 April 2007 (*id.* 10, 15). With respect to that request and in all subsequent proceedings in this case, plaintiff has been represented by counsel.

On 24 September 2008, the Appeals Council received Dr. Maultsby's medical source statement into evidence and denied plaintiff's request for review. *Id.* 5-7. By letter dated 30 March 2009, it allowed plaintiff's request for an additional 30 days from receipt of the letter in which to seek judicial review of its decision. *Id.* 9.

Plaintiff commenced this proceeding on 30 April 2009 by filing a motion to proceed *in forma pauperis* (D.E. 1) accompanied by a proposed complaint seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (D.E. 1-2). After the motion was denied (*see* D.E. 4), plaintiff paid the filing fee within the time set by the court (*see* D.E. 6), and his complaint (D.E. 7) was filed on 8 June 2009. The parties subsequently filed their motions for judgment on the pleadings. Plaintiff filed with his motion medical evidence not previously in the record. (*See* D.E. 16-2 though 16-4).

## B.    Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

3

education, and work experience, engage in any other kind of substantial gainful work which exists

in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act

defines a physical or mental impairment as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the

ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work ["PRW"]. If you can still do your [PRW], we will find that you are not disabled. . . .

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

4

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

Relevant at this step are the Medical-Vocational Guidelines or so-called grid rules, 20 C.F.R. pt. 404, subpt. P, app. 2. They indicate whether an individual is "disabled" or "not disabled" based on the exertional level of work the individual is found to be able to perform as part of his RFC and his vocational profile, comprised of his age, education, and past work experience. *Id.* § 200.00(a). The decision of "disabled" or "not disabled" specified in the grid rules reflects an administrative determination as to whether sufficient jobs exist in the national economy for the individual given his exertional level and vocational profile. *Id.* § 200.00(b).

If an individual can perform all or substantially all of the exertional demands at a given exertional level, the grid rule directs the conclusion on disability—that is, the conclusion of "disabled" or "not disabled" indicated by the rule has controlling effect. Soc. Sec. Ruling 83-11, 1983 WL 31252, at *1 (1983).[4] If the individual cannot perform all or substantially all the exertional demands or has non-exertional limitations, the grid rules are used as a framework for decision making, subject to certain exceptions. *See* Soc. Sec. Ruling 83-12, 1983 WL 31253, at *1 (1983); Soc. Sec. Ruling 83-14, 1983 WL 31254, at *1 (1983).

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523,

---

[4] Rulings are interpretations of the Act by the Social Security Administration that, while lacking the force of law, are entitled to deference unless they are clearly erroneous or inconsistent with the law. *Pass*, 65 F.3d at 1204 n.3 (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.1989)).

416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1523, 416.923.

### C.    Findings of the ALJ

Plaintiff was 45 years old on the alleged onset date of disability and 48 years old on the date of the administrative hearing. *See* tr. 21 ¶ 7. Plaintiff has past work experience as an automobile technician at a garage and a heavy equipment technician. *Id.* 21 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. *Id.* 17 ¶ 2. At step two, the ALJ found that plaintiff had one medically determinable impairment that was severe within the meaning of the Regulations: status-post arthroscopy of the right knee. *Id.* 18 ¶ 3; 20;[5] *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). He found that neither the nodules of which plaintiff complained or his alleged prior heart attack were severe impairments. Tr. 18 ¶ 3. At step three, the ALJ found that plaintiff did not have any impairments that met or medically equaled, singly or in combination, one of the impairments listed in Appendix 1 to 20 C.F.R. pt. 404, subpt. P. Tr. 18 ¶ 4.

---

[5] The formal finding identifies the knee in question as the left knee, but all the medical evidence of a knee impairment relates to the right knee (*see* tr. 20) and the ALJ elsewhere refers to the impaired knee as the right knee (*see id.* ("The undersigned Administrative Law Judge finds that the claimant's musculoskeletal impairment of the *right* knee has been accommodated by limiting the claimant to sedentary work." (emphasis added))). The court finds that the reference to the left knee in the ALJ's finding was an inadvertent error.

6

The ALJ then determined that plaintiff had the RFC to perform the full range of sedentary work.[6] *Id.* 18 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff could not perform any past relevant work. *Id.* 21 ¶ 6.

At step five, again relying on his determination that plaintiff did not have any limitations that prevented him from performing the full range of sedentary work, the ALJ determined that the Medical-Vocational Guidelines were controlling. *Id.* 22 ¶ 10. Based on plaintiff's RFC and the vocational factors of his age (*i.e.*, younger individual category), education (*i.e.*, limited or less but literate and able to communicate in English), and previous work experience (*i.e.*, skilled or semiskilled with skills not transferable), the ALJ found Medical-Vocational Rule 201.19 to be applicable. *Id.* 21 ¶¶ 7, 8; 22 ¶ 10. It directs a finding of "not disabled." *Id.* 22 ¶ 10. The ALJ concluded that plaintiff was not disabled from the alleged onset of disability through the date of the decision. *Id.* 22 ¶ 11.

## II. DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong

---

[6] The Regulations define "sedentary work" as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

7

legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401. When, as here, the Appeals Council accepts into the record evidence relating to the alleged period of disability not presented to the ALJ, the court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." *Wilkins v. Sec., Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an

8

adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B.    Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ erred by: (1) not adequately assisting plaintiff as an unrepresented claimant in developing the record; (2) not adequately considering plaintiff's nodule condition; and (3) finding the Commissioner to have established that there are a sufficient number of jobs available to plaintiff. In addition, plaintiff contends that this case should be remanded for consideration of the medical evidence submitted with his motion for judgment on the pleadings. The court will address each ground advanced by plaintiff in turn.

### C.    Adequacy of ALJ's Development of the Record

Plaintiff contends that the ALJ failed to carry out his heightened duty in a pro se case to develop the record, particularly with respect to plaintiff's nodules. The court disagrees.

In all cases, "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). In pro se cases, the ALJ must "assume a more active role in helping claimants develop the record." *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980). If information is needed that is not readily available from records of a medical treating source or a treating source himself, the ALJ is to ask the claimant to attend one or more consultative examinations. 20 C.F.R. §§ 404.1513(f), 416.912(f).

Plaintiff contends that the ALJ failed to meet his burden of developing the record, in part, by referring plaintiff to an orthopedist for the consultative examination, rather than a physician with

a specialty relating more directly to the nodule condition of which he complained. The Regulations, however, require simply that a consultative examination be performed by "a qualified medical source"—that is, a medical source that is currently licensed and has the training and experience to perform the type of examination ordered by the ALJ. *See* 20 C.F.R. §§ 404.1519g(a),(b), 416.919g(a), (b). There is no requirement that the medical source have a particular specialty. Plaintiff has offered no evidence that Dr. Maultsby, the physician who performed the consultative examination ordered by the ALJ, did not constitute "a qualified medical source."

Plaintiff further contends that the ALJ should have had the consultative examination performed specifically by a physician specializing in pain management to whom plaintiff said at the hearing he had spoken about his nodules. But, as plaintiff himself testified, the physician in question was treating his wife and was not treating him. Tr. 210. In addition, although plaintiff said this physician told him that the "knots" were a type of tumor, the physician also said that he could not be sure without tests being taken. *Id.* 210, 211. Thus, the record does not show that this physician had developed any unique insight into plaintiff's condition that could conceivably have warranted his designation as the consultative examiner.

Plaintiff also argues that the ALJ did not adequately develop the record regarding plaintiff's nodules at the hearing itself and did not seek by the consultative examination to develop the record regarding them, as opposed to his knee. The record belies these contentions.

Plaintiff testified at the hearing about the presence of "knots" in his elbow, chest, and arms; pain and swelling in his arms, and pain, swelling, lack of feeling, and loss of grip strength in his hands that he associated with the "knots"; and resultant functional limitations. *Id.* 209-10, 211. The ALJ had elicited some of this testimony by the general request that plaintiff explain why he feels he

10

cannot work. *Id.* 209. The ALJ elicited the remainder by asking plaintiff specifically who was treating him for the "knots"; whether his grip-strength problem affected both hands; whether the "knots" were in his chest as well as his arms; and whether anybody had diagnosed the "knot" problem. *Id.* 210, 211. It was immediately after this latter inquiry, to which plaintiff's response was negative, that the ALJ found there was a lack of medical evidence and stated that he was ordering a consultative examination. *Id.* 212. Thus, the ALJ did develop the record at the hearing regarding plaintiff's nodules and sought to develop it further through the consultative examination he ordered.

Moreover, the consultative examination did clearly result in further development of the record concerning the nodules. In the examination report, Dr. Maultsby recites plaintiff's complaints regarding the nodules and sets out findings (which term encompasses opinions asserted) about them. *Id.* 167, 168. Specifically, he found two discrete nodules in plaintiff's right arm and one in his left arm, all about one centimeter by one centimeter by half a centimeter, in addition to one in his chest. *Id.* 168. Dr. Maultsby also found that plaintiff had 5/5[7] strength and a full range of motion in the upper extremities. *Id.* In addition, he administered a grip-strength test, which he apparently interpreted as showing that plaintiff had no limitations on grip strength. *Id.; see also id.* 203, 204 (portions of Dr. Maultsby's medical source statement discussed directly below). Dr. Maultsby diagnosed plaintiff with "subcutaneous nodules in his arm and chest, possible neurofibroma with secondary pain and numbness." *Id.*

In the medical source statement Dr. Maultsby later submitted to the Appeals Council, he evaluated plaintiff's limitations in various areas plaintiff alleged were affected by the nodules, including hand manipulation, and pushing and pulling, which includes operation of hand controls.

---

[7] An explanation of the 0/5 to 5/5 muscle strength scale is located at D.E. 156.

11

*See id.* 202-05. He found plaintiff to be without limitation with respect to these specific areas and all other areas evaluated, except for the maximum amount of weight he could lift and carry (*i.e.*, 50 pounds occasionally and at least 20 pounds frequently).[8] *Id.*

Dr. Maultsby's report and medical source statement are not the only medical evidence in the record relating to plaintiff's nodules. The record also contains the report of a consultative examination that had been performed on plaintiff by Dale Caughey, Jr., M.D. on 9 November 2004. *See id.* 152-57. In addition, non-examining consultant Alan Cohen, M.D. completed a physical RFC assessment on plaintiff, dated 4 January 2005, that included findings on plaintiff's upper extremities. *Id.* 161, 165. This assessment was affirmed upon reconsideration of plaintiff's application by non-examining consultant David H. Brown, M.D. on 9 March 2005. *Id.* 166. Thus, in developing the record on plaintiff's nodules, the ALJ was not working from scratch.

Plaintiff also argues that the relative brevity of the hearing—six minutes (*see id.* 208, 213)—shows that the ALJ did not adequately develop the record. The length of a hearing is not, however, determinative of whether the ALJ has met this obligation. *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993). "'[T]he more important inquiry is whether [sufficient questions were asked] to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities.'" *Id.* (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992)). The inquiries by the ALJ at the hearing, as previously reviewed, were sufficient to obtain

---

[8] With respect to the capacity for frequent lifting and carrying, the check mark by Dr. Maultsby falls between the box for 20 pounds and that for 50 pounds. Tr. 202.

12

the requisite available information in these areas with respect to plaintiff's nodules.[9] The ALJ's examination of plaintiff at the hearing was otherwise adequate.

The court concludes that the ALJ met his heightened obligation to develop the record in this case. Plaintiff's first challenge to the decision in this case therefore fails.

### D. Adequacy of ALJ's Consideration of Plaintiff's Nodule Condition

Plaintiff next contends that the ALJ did not adequately consider plaintiff's nodules in his decision. He argues specifically that the ALJ erred by failing to find at step two of the sequential analysis that plaintiff's nodules were a severe impairment. Plaintiff's argument has merit.

There is no question that there is evidence in the record tending to support the ALJ's determination that plaintiff's nodule-related condition was not a severe impairment. It includes certain findings by Dr. Maultsby, as previously discussed. But there is also contrary, limitation-supportive evidence in the record.

Such evidence includes findings by Dr. Caughey in his 9 November 2004 examination report. He found that plaintiff had developed several very painful lipoma type lesions along the tendon sheath of his left arm, resulting in motion pain and tightness. Tr. 152, 153. Although Dr. Caughey determined that plaintiff was able with his right hand to do fine motor movement, pinch, open a door knob, and reach, he found that these actions were difficult and painful for plaintiff with his left hand. *Id.* 153. Significantly, he rated plaintiff with 4/5 strength in his upper left extremity and 4/5 strength in his left hand grip. *Id.* 156.

---

[9] The information elicited at the hearing regarding plaintiff's daily activities was admittedly sparse, but there was sufficient evidence in the record as a whole to enable the ALJ to make findings regarding his daily activities. *See* Tr. 21; *see also id., e.g.,* 167, 209-10.

There is also the physical RFC assessment by non-examining consultant Dr. Cohen, which was done after Dr. Caughey's examination of plaintiff and was affirmed by non-examining consultant Dr. Brown. It found that plaintiff had a manipulative limitation, namely, that he was limited to occasional fingering with his upper left extremity. *See id.* 161 ("Occas. Fi LUE"), 165, 166.

The flaw in the ALJ's analysis generally and his severity determination in particular is that he does not adequately explain why he apparently gave the limitation-supportive medical evidence regarding plaintiff's nodule condition little, if any, weight. Indeed, he does not discuss Dr. Caughey's nodule-related findings at all. The failure to discuss these findings is particularly striking because Dr. Caughey is only one of two examining sources of record who made findings regarding plaintiff's nodule condition, and there are no treating sources of record for the nodule condition. The ALJ's lack of discussion of Dr. Caughey's nodule-related findings is all the more puzzling because he does discuss, and in detail, Dr. Caughey's findings in the same report regarding plaintiff's right knee (*see id.* 20 & n.4, 21) and why he did not accept Dr. Caughey's opinion regarding the associated limitations on plaintiff's walking ability (*i.e.*, that plaintiff was not capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living) (*see id.* 21).

As to Dr. Cohen's RFC assessment, the ALJ states in his decision that "[w]hile the State Agency medical consultant and the undersigned disagreed on further limitations [beyond the sedentary work limitation,] . . . the undersigned credits the specific limitations found in those reports only to the extent they are supported by the weight of the evidence of record as a whole as set forth previously." *Id.* 21. By its terms, this statement would appear to encompass the fingering limitation noted in the RFC assessment. There is no other reference to the findings by Dr. Cohen.

14

The statement signifies that the ALJ did not credit the fingering limitation found by Dr. Cohen on the grounds that it is not supported by the weight of the evidence of record as a whole as set forth elsewhere in the decision. But, as discussed above, the decision does not explain the weight given to or otherwise mention at all Dr. Caughey's nodule-related findings. Therefore, the ALJ's reliance on "the weight of the evidence of record as a whole as set forth previously" sheds essentially no light on the basis for his apparent rejection of the findings in Dr. Cohen's RFC assessment.

The ALJ's deficient handling of the limitation-supportive evidence of plaintiff's nodule condition manifests itself most dramatically in the context of his severity determination. As indicated, the ALJ expressly found that plaintiff's nodules were not a severe impairment. *Id.* 18 ¶ 3. The entire explanation provided by the ALJ for this determination was a single sentence: "Although the claimant alleged disability due to knots in the left arm and chest, examinations have shown nodules in both arms but 5/5 muscle strength." *Id.* This is an obvious reference to the corresponding findings by Dr. Maultsby in his examination report, as reviewed above. *See id.* 168. There is no mention of any of the contrary evidence.

Thus, there is no explanation why the 5/5 strength rating by Dr. Maultsby is of such singular significance that it alone is determinative of the severity status of plaintiff's nodule condition. Plaintiff and the court are left to wonder why Dr. Maultsby's rating is given greater weight than the 4/5 rating of plaintiff's upper left extremity by Dr. Caughey, his findings regarding the limitations on plaintiff's left hand, and the limitations found by Dr. Cohen in his RFC assessment.

The de minimis nature of the test for severity enhances the need for an explanation of the contrary evidence. Although the Regulations provide that an impairment is severe if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§

15

404.1520(c), 416.920(c), the Fourth Circuit has clarified that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks omitted). Thus, only a minimal showing of limitation due to the nodule condition is sufficient to render it a severe impairment.[10] Without an explanation from the ALJ, it is unclear why the findings by Dr. Caughey and by Dr. Cohen, either individually or collectively, were not sufficient to make this minimal showing.[11]

The consequences of the ALJ's non-severity determination were potentially outcome determinative. The determination appears to underlie the ALJ's subsequent finding that plaintiff has the RFC to perform sedentary work without other limitations, that is, the RFC to perform the full range of sedentary work. It is this full-range finding that gave the Medical-Vocational Guidelines controlling effect at step five of the sequential analysis, establishing conclusively that there were sufficient jobs available to plaintiff. Thus, if the ALJ had found plaintiff's nodule condition to be a severe impairment, that finding may well have precluded the full-range finding, as well as a finding that plaintiff could perform substantially all the exertional demands at the sedentary level, and, as

---

[10] The ALJ seemed to understand this, stating that "this [nodule] impairment is not severe and has no more than a minimal impact on the claimant's ability to work." Tr. 18 ¶ 3.

[11] The ALJ also left unresolved an ambiguity in the findings by Dr. Maultsby regarding the grip-strength test he administered to plaintiff. Dr. Maultsby found as follows: "When asked to squeeze his fingers together, there was a very weak attempt to hold his fingers together and the examiner had no problems pulling out of his fingers and yet there was some maximal effort to do this." *Id.* 168. As the Commissioner concedes, it is unclear whether "maximal effort" refers to Dr. Maultsby's effort in pulling out of plaintiff's fingers or plaintiff's in squeezing his fingers together. (Def.'s Mem. 11). The ALJ does not address this finding, but his determination that plaintiff can perform the full range of sedentary work suggests that he gave it substantial weight. It is questionable whether the ALJ could appropriately rely on a muddled medical finding such as this on a material issue without addressing the ambiguity. In any event, the remand will provide the Commissioner the opportunity to clarify his understanding of the finding.

16

a result, the Guidelines would not have had controlling effect. Instead, the Commissioner would have had the burden of showing by other means that there are sufficient jobs available to plaintiff. The Commissioner has not attempted to make, and has not made, this showing. Thus, a determination that plaintiff's nodule condition was a severe impairment would have left open the reasonable possibility of a determination at step five that plaintiff is disabled.

As this discussion makes clear, the non-severity finding by the ALJ at step two of the sequential analysis implicates not only the ultimate outcome of the case, but also the intermediate determinations producing it. The impact is most clearly seen at step five where, as indicated, a finding of severity could well preclude direct application of the Medical-Vocational Guidelines and require presentation of evidence, possibly including use of a vocational expert, on the availability of jobs to plaintiff. A finding of severity would also, of course, affect the analysis at step three—whether any of plaintiff's impairments met or medically equaled a listing, singly or in combination—and determination of plaintiff's RFC. Indeed, if plaintiff's nodule condition were found to be a severe impairment, it would have to be considered in combination with plaintiff's severe knee-related impairment throughout the disability determination process. *See* 20 C.F.R. §§ 404.1523, 416.923.

For this and the other reasons discussed, the court concludes that the ALJ erred by failing to adequately explain the weight he accorded the limitation-supportive medical evidence of plaintiff's nodule condition. This failing prevents the court from determining whether the weight that was accorded and ultimately the determination that plaintiff is not disabled were lawful.[12] The error also

---

[12] Needless to say, the court has no opinion on the weight that should be accorded this evidence or on the ultimate outcome of plaintiff's claim, and nothing in this Memorandum and Recommendation should be interpreted as expressing any such opinion. These are matters left for determination by the Commissioner.

17

deprives plaintiff of the explanation of the Commissioner's decision to which the Regulations entitle him. *See* 20 C.F.R. §§ 404.953(a) (requiring that ALJ's decision give the reasons for the decision), 416.1453 (same). The Commissioner's motion should accordingly be denied and this case remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[13]

### E.    ALJ's Determination on Availability of Jobs to Plaintiff

Plaintiff contends that the ALJ erred at step five of the sequential analysis by finding there were sufficient jobs available to plaintiff based on application of the Medical-Vocational Guidelines. The essence of plaintiff's argument is that the Medico-Vocational Guidelines were not controlling because, due to impairment from his nodules, he could not perform the full range of sedentary work. Thus, this contention by plaintiff is an extension of his argument that the ALJ did not adequately consider his nodule condition.

As the court's prior discussion makes clear, the Commissioner will need on remand to revisit the issue of whether plaintiff can perform the full range of sedentary work and thereby whether the Medical-Vocational Guidelines are controlling at step five. Therefore, plaintiff's contention is presently moot and the court declines to address it on the merits.

### F.    Requested Remand for Consideration of New Evidence

#### 1.    Standard for Remand

Plaintiff seeks remand of this case to the Commissioner for consideration of the following evidence, which he submitted for the first time with his motion for judgment on the pleadings: a declaration (D.E. 16-2) by a physician, Henry Lepore, M.D., treating plaintiff for pain associated

---

[13] A remand is governed by sentence four, as opposed to sentence six, of § 405(g) when it is based on disapproval of the Commissioner's decision due to failure to adequately articulate the basis of his decision or other error, as is recommended here. *See Richmond v. Chater*, 94 F.3d 263, 268 (7th Cir. 1996).

18

with nodules in his arms and chest, and right knee; a medical statement (D.E. 16-3) by Dr. Lepore regarding plaintiff's abilities and limitations; and Dr. Lepore's treatment notes (D.E. 16-4). Dr. Lepore was the pain management specialist treating plaintiff's wife about whom plaintiff testified at the hearing. To merit remand, this evidence must meet the requirements of sentence six of 42 U.S.C. § 405(g) ("sentence six").[14] Contrary to plaintiff's contentions, it does not.

Sentence six permits remands "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). There are accordingly three distinct requirements under sentence six.[15] *See, e.g., Nuckles v. Astrue,* No. 7:09-CV-13-FL, 2009 WL 3208685, at *4 (E.D.N.C. 5 Oct. 2009).

First, the evidence must be new. Evidence is deemed new if it is not duplicative or cumulative of evidence already in the record. *Wilkins,* 953 F.2d at 96. Evidence that was available during the administrative hearing but not submitted does not qualify as new evidence. *Wilkins v. Sec'y of Health and Human Servs.,* 925 F.2d 769, 774, *rev'd on other grounds,* 953 F.2d 93 (4th Cir. 1991) *(en banc).*

---

[14] The recommended remand pursuant to sentence four does not moot the requested remand pursuant to sentence six. *See Jackson v. Chater,* 99 F.3d 1086, 1093 & n.3 (11th Cir. 1996).

[15] In *Borders v. Heckler,* 777 F.2d 954, 955 (4th Cir. 1985), the Fourth Circuit enunciated a four-part test for remand for consideration of new evidence. The test is more stringent than that under sentence six. *Borders* requires that (1) the evidence be relevant to disability and not merely cumulative; (2) the evidence be material; (3) the claimant show good cause for submitting the evidence late; and (4) the claimant present to the reviewing court at least a general showing of the nature of the new evidence. *Id.* Although the Fourth Circuit has indicated that sentence six supersedes this standard, *Wilkins v. Sec'y of Health and Human Servs.,* 925 F.2d 769, 774, *rev'd on other grounds,* 953 F.2d 93 (4th Cir. 1991) *(en banc),* some courts have held that it continues in effect, *e.g., Bartell v. Barnhart,* No. C/A3:04-22648CMC-JRM, 2006 WL 4509263, at *8 n.6 (D.S.C. 21 Feb. 2006), *aff'd,* 204 Fed. Appx. 177 (4th Cir. 2006). The court need not resolve the issue here because, having failed to meet the requirements for remand under sentence six, plaintiff also fails to meet the requirements under *Borders.*

19

Second, the evidence must be material. Evidence is material if there is a reasonable possibility that it would have changed the outcome. *See Wilkins*, 953 F.2d at 96. Evidence is not material if it does not relate to the time period that was before the Commissioner. *See Edwards*, 2008 WL 474128, at *9 ("The [new records] do not relate back to the relevant time period as they were both done over 6 months after the ALJ rendered his decision.").

Third, there must be good cause for failing to submit the evidence earlier. This requirement for good cause was added by Congress in 1980. *See* Social Security Disability Amendments of 1980, P.L. 96-265 § 307, 94 Stat. 441 (1980). The courts have recognized that Congress's intent was to permit remands pursuant to sentence six on a very limited basis. *Rogers v. Barnhart*, 204 F. Supp. 2d 885, 892 (W.D.N.C. 2002) ("'Congress made it unmistakably clear' that it intended to limit remands for 'new evidence.'") (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The burden of showing that the good-cause and other requirements of sentence six are met rests with the claimant. *See Fagg v. Chater*, 106 F.3d 390 (Table), 1997 WL 39146, at *2 (4th Cir. 3 Feb. 1997).

### 2. Newness

Turning now to the evidence plaintiff has filed, the court finds that most of it does not qualify as new within the meaning of sentence six. The evidence that is not new includes Dr. Lepore's medical statement of plaintiff's abilities and limitations. The treatment notes show that from plaintiff's first visit, Dr. Lepore assessed him as having the nodule condition. (*See, e.g.*, Treat. Notes 11-13). Therefore, a medical statement comparable to the one plaintiff filed with his motion was available prior to the close of the administrative hearing record on 28 February 2007. Such a statement was thus also necessarily available at the time plaintiff submitted his review request to the Appeals Council on 2 April 2007. *See* 20 C.F.R. §§ 404.968(a) (requiring submission of additional

20

evidence with request for review), 404.970(b) (requiring the Appeals Council to consider new and material evidence that relates to the period on or before the date of the ALJ's decision), 416.1468(a), 416.1470(b). Accordingly, the statement he did file cannot be considered new. *See Wilkins*, 925 F.2d at 774; *Perkins v. Chater*, 107 F.3d 1290, 1296 (1997) (holding to be not new medical evaluations "technically not in existence" at the time of the hearing that were based on evidence that had long been available). The same rationale applies to the declaration by Dr. Lepore accompanying his treatment notes and medical statement, and establishes that it is not new.

In the case of Dr. Lepore's treatment notes, three are for office visits on dates prior to the close of the hearing record on 28 February 2007: 17 October 2006, 15 November 2006, and 9 January 2007.[16] (*See* Treat. Notes 11-13). These notes were thus available during the pendency of proceedings before the ALJ and are therefore not new. These notes, as well as the next treatment note, for 2 March 2007 (Treat. Notes 10), were also available prior to plaintiff's request for review by the Appeals Council. They are therefore not new on this additional ground.

The remaining nine treatment notes (Treat. Notes 1-9), covering the period 27 April 2007 to 11 February 2009, are arguably new. Thus, with the exception of these treatment notes, the evidence filed by plaintiff in this court fails to meet the first requirement for remand under sentence six.

### 3.    Materiality

Review also shows that some, but not all, of the evidence satisfies the materiality requirement for remand. The court finds that, at least with respect to plaintiff's nodule condition, Dr. Lepore's medical statement and declaration, which incorporates by reference the statement, are material. The

---

[16] In his declaration, Dr. Lepore erroneously states that he began treating plaintiff on 15 November 2006. (Lepore Dec. 1 ¶ 2).

21

medical statement includes Dr. Lepore's findings regarding gross and fine manipulation in both plaintiff's left and right hands. (Med. Stment. 1). In the declaration, Dr. Lepore makes findings regarding plaintiff's nodule condition and the limitations it imposes on him. (Lepore Dec. 2 ¶¶ 4, 5). Although both the medical statement and declaration are dated 31 August 2010, Dr. Lepore states in the declaration that "this condition and these limitations have been present since 2003." (*Id.* 2, ¶ 5). The period they cover therefore includes the relevant period in this case, which is from 22 April 2003, the alleged date of onset of disability, to 1 March 2007, the date of the ALJ's decision. *Wilkins*, 953 F.2d at 68 (recognizing that a physician may offer a retrospective opinion on the extent of an impairment).

The court finds that there is a reasonable possibility that the medical statement and declaration would have changed the outcome of the case. This evidence would be the only evidence from a treating source regarding plaintiff's nodule condition. The opinions of treating sources, of course, are ordinarily entitled to greater weight than those of other sources depending on certain factors. *See* 20 C.F.R. § 404.1527(d)(2); *see also Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996).

Moreover, because the standard for severity is de minimis, there is a reasonable possibility that the evidence from Dr. Lepore could result in a change of the ALJ's determination that plaintiff's nodule condition is not a severe impairment. As discussed previously, if that determination were to change, the ALJ's finding that plaintiff has no limitations preventing him from performing the full range of sedentary work could change; that change would deprive the Medical-Vocational Guidelines of controlling effect; and the Commissioner would then have the burden of proving by other means

22

that there are sufficient jobs in the national available to plaintiff, which he might or might not be able to meet.

As to Dr. Lepore's treatment notes, the court finds that the notes for the first four visits, from 17 October 2006 until 2 March 2007, are material as providing support for Dr. Lepore's declaration and medical statement. The notes from the next three visits, on 27 April, 20 June, and 13 August 2007, are arguably material on the same basis. However, the remaining six treatment notes, from 3 December 2007 to 11 December 2009, are cumulative of the other notes to the extent that they show a continuation of plaintiff's nodule condition and limitations. To the extent that they show a change in that condition or limitations, they do not relate to the relevant period. These last six treatment notes are therefore not material.

### 4. Good Cause

As to the third requirement for remand, plaintiff has failed to show good cause why he could not have submitted all the evidence in prior proceedings. One justification offered by plaintiff for his tardiness is that he lacked counsel. But plaintiff should have been aware prior to 1 March 2007 ( again, the date of the ALJ's decision) that the ALJ had not yet made a decision in the case because he had not by then received notice of it. He also had to know that Dr. Lepore's findings would be favorable to his case. There is no evidence that plaintiff made any effort to apprise the ALJ of his treatment by Dr. Lepore or even to inquire about whether or how he could do so.

In any event, plaintiff's lack of counsel does not justify the failure to submit the evidence from Dr. Lepore with the request for review to the Appeals Council or to ask the Appeals Council for additional time to submit. At that point, plaintiff was represented by counsel. And he had been seeing Dr. Lepore for over five months.

23

Notably, both the notice to plaintiff accompanying the ALJ's decision (tr. 12) and the request for Appeals Council review submitted by plaintiff's counsel (*id.* 10) stated that any additional evidence should be submitted with the request for review. The request for review also explained that, if needed, an extension of time could be requested for the submission of additional evidence. *Id.*

The other justification advanced by plaintiff for his tardiness is lack of financial means to obtain the evidence. This contention, though, is belied by the fact that plaintiff did, in fact, obtain treatment from Dr. Lepore notwithstanding any financial concerns during the pendency of administrative proceedings, as discussed. Moreover, had plaintiff advised the ALJ of the evidence from Dr. Lepore, he could have had Dr. Lepore paid the reasonable cost of providing it. *See* 20 C.F.R. §§ 404.1514, 416.914. Thus, the good-cause requirement for remand is not met with respect to any of the evidence plaintiff filed for the first time in this court.

Accordingly, none of the evidence meets all three requirements for remand under sentence six. Plaintiff's request for remand should therefore be denied in its entirety.

### III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion for judgment on the pleadings be DENIED, plaintiff's motion for judgment on the pleadings be ALLOWED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue

24

covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 23 day of December 2010.

James E. Gates
United States Magistrate Judge